UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-22862-CIV-KING/BANDSTRA

GROUP USA, INC.,

     Plaintiff,

vs.

DOLPHIN MALL ASSOCIATES, LLC,
and THE TAUBMAN COMPANY, LLC,

     Defendants.

_____/

CASE NO. 10-22854-CIV-KING/BANDSTRA

DOLPHIN MALL ASSOCIATES, LLC,

     Plaintiff,

vs.

GROUP USA, INC.,

     Defendant.

_____/

**DOLPHIN MALL PARTIES' RESPONSE TO GROUP
USA, INC.'S MOTION FOR SUMMARY JUDGMENT AND
CONSOLIDATED CROSS-MOTION FOR SUMMARY JUDGMENT**

     DOLPHIN MALL ASSOCIATES, LLC ("DMA") and THE TAUBMAN COMPANY,

LLC ("Taubman") (collectively, "Dolphin Mall Parties"), by and through undersigned counsel

and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 7.5, hereby submit the following response

to the Motion for Summary Judgment (D.E. #36) filed by GROUP USA, INC. ("Group USA").

As part of this response, Dolphin Mall Parties also submit a consolidated Cross-Motion for

Summary Judgment.  Dolphin Mall Parties' Response to Group USA, Inc.'s Statement of Facts

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

("GUSA Stmt.") (D.E. #38) and Consolidated Supplemental Statement of Undisputed Material Facts ("DMP Stmt."), filed in conjunction with this Response, is incorporated by reference.

## I.      Introduction and Factual Summary

The parties agree that the pertinent facts in this matter are largely undisputed.  The question presented for the Court to determine is straightforward – whether it should rewrite the terms of a commercial lease binding two substantial and sophisticated business enterprises so as to excuse Group USA's negligent failure to comply with the lease's explicit requirement that it exercise in a timely fashion an option to extend the lease term.  As is established herein, it would not be a proper exercise of the Court's discretionary, equitable authority to do so.  Instead, the Court should enforce the lease as written and declare that Group USA cannot extend the lease, and that its rights to the leased premises end on February 28, 2011 with the expiration of the original term of the lease.

Group USA is a tenant and DMA is the landlord at Dolphin Mall, a shopping mall in Miami-Dade County (GUSA Stmt. ¶ 9).[1]  The original term of the lease was for 10 years, commencing March 1, 2001, when Dolphin Mall opened, and expiring February 28, 2011 (*id.* ¶ 14).  Pursuant to Section 4.2 of the lease, Group USA had two options to extend the term of the lease for two ten-year periods beyond the original term.  In order to exercise the first option, however, Group USA was required to provide timely written notice to the landlord at least one year prior to the original term's expiration, i.e., no later than February 28, 2010 (*id.* ¶ 15).  Specifically, in pertinent part, the lease provides as follows:

> …Written notice to extend the term of the Lease must be delivered by Tenant to Landlord at least one (1) year prior to the expiration date of the then current term of this Lease….  **Failure of Tenant to exercise its option to extend for any**

---

[1] Taubman is the managing agent for DMA (DMP Stmt. ¶ 12).

2

**Option Term within the time frame and in the manner provided shall render
such option and all subsequent options null and void and of no further force
or effect**.

(*Id.*) (emphasis added).

The Dolphin Mall Parties have no responsibility under the terms of the lease for
providing notice of an upcoming extension deadline and they do not undertake that responsibility
unless such a lease provision has been negotiated by a tenant (DMP Stmt. ¶¶ 56, 57).  Group
USA was nevertheless well aware of the extension option provisions.  On October 10, 2007,
Group USA provided a Tenant Estoppel Certificate to DMA accurately reflecting that "[t]he
term of the Lease commenced on March 1, 2001" and that "[t]he original term of the Lease
expires on February 28, 2011 and Tenant has two option(s) to renew the Lease" (*id.* ¶ 29).

Despite its expressed understanding and its accurate representations in October 2007 of
the lease commencement and expiration dates and the number of options remaining, Group USA
nonetheless bases its failure to timely exercise the extension option on what it terms a "mistake".
Specifically, its vice president of finance allegedly committed the "mistake" two months earlier,
in August 2007, when he erroneously entered the lease commencement date in an internal Group
USA document (GUSA Stmt. ¶¶ 26, 29).  Group USA had in its possession all the information it
needed to determine what the extension option deadline was.  Its purported "mistake" in failing
to exercise the extension option before the deadline passed was unilateral and committed by
Group USA without contribution from the Dolphin Mall Parties (DMP Stmt. ¶ 62).

It is undisputed that it came to the attention of the Dolphin Mall Parties in mid-to-late
June 2010 that Group USA's extension option deadline had passed (*id.* ¶ 32) and, after
confirming that fact, formal notice was provided to Group USA on June 28, 2010 that the lease
was expiring on February 28, 2011 and would not be extended (GUSA Stmt. ¶ 39).  Group USA

3

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

first responded eight days later, on July 6, 2010, when it apologized for its "mistake" and requested that it still be allowed to exercise the extension option (*id.* ¶ 42).  This request was formalized by a letter from Group USA dated July 7, 2010 (*id.* ¶ 43), which was dispatched a full **129 days** after the extension option deadline passed and, by its terms, was contractually rendered "**null and void and of no further force or effect**" (DMP Stmt. ¶ 60).  Prior to July 6, 2010, Group USA had not communicated to the Dolphin Mall Parties in any fashion that it intended to exercise the extension option, and the Dolphin Mall Parties were unaware of Group USA's intensions regarding exercise of the extension option (*id.* ¶¶ 58, 59).

The Dolphin Mall Parties are unable to re-lease the space now occupied by Group USA to a new tenant after lease expiration on February 28, 2011 because Group USA's position that it is entitled to exercise the extension option notwithstanding its failure to comply with the option deadline makes it impossible for DMA to commit to a delivery date for a new tenant (*id.* ¶ 64).  Group USA has been the lowest performing anchor or major tenant at Dolphin Mall.  Prospective replacement tenants are expected to generate more business for Dolphin Mall and increase revenues for all tenants and for DMA (*id.* ¶ 65).  In fact, it is anticipated that a new tenant will pay from $1,200,000 to over $2,000,000 more annually for the space than does Group USA (GUSA Stmt. ¶ 36), which only pays approximately $150,000 per year in rent (DMP Stmt. ¶ 66).

**II.    Case Law Establishes Very Narrow Grounds for Equitably Excusing Group USA's Failure, which Grounds Are Not Satisfied Here**

In its motion, Group USA undertakes an incomplete review of the law governing when a court may excuse a tenant's failure to comply with a lease's extension option provision.  As is explained below, application of settled law to the undisputed facts here leads to the conclusion that there is no proper basis to grant the equitable relief sought by Group USA.

COFFEY BURLINGTON

Group USA describes *Dugan v. Haige*, 54 So. 2d 201 (Fla. 1951), as the "seminal case" in this area.  In *Dugan*, the Florida Supreme Court found no abuse of discretion in the trial court's exercise of equity in extending a lease where written renewal notice was given only 18 days after the deadline, where the landlord had prior actual notice of the tenant's intent to extend, the landlord had not been injured by the delay in providing written notice, and the equities were with the tenant because the tenant's copy of the lease did not reflect that the lease was expiring for another five years.  *Id.* at 202.  Quoting 32 AM. JUR. *Landlord and Tenant* § 981, the court held that "[e]quity will relieve against the consequences of a failure to give notice which is a condition precedent to the renewal of a lease when such failure results from accident, fraud, surprise, or mistake, and there are other special circumstances."  *Id.*

*Dugan* supports the denial of equitable relief here.  Unlike the tenant in *Dugan*, Group USA missed the option deadline by 129 days, not 18 days (DMP Stmt. ¶ 60).  Moreover, also unlike the situation in *Dugan*, DMA did not have prior notice of Group USA's intent to extend (*id.* ¶ 59), and the information in Group USA's possession was what it needed to determine correctly the extension option deadline (*id.* ¶ 62).

The pertinent Florida court decisions in this area subsequent to *Dugan* likewise highlight that Group USA has no entitlement to equitable relief.  Another case cited by Group USA is *Ledford v. Skinner*, 328 So. 2d 219 (Fla. 1st DCA 1976), where a jury verdict permitting tenants to exercise a renewal and purchase option that was not invoked timely was affirmed because the landlord waived the failure by orally agreeing with the tenants that it was not necessary once they expressed a desire to renew and accepting rent after the lease expired.  *Id.* at 221.  The court held, however, that the tenants' "mere expression at trial of an intention to have timely exercised the renewal option is not sufficient to gain for them the benefit of a lease renewal."  *Id.*  In

5

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

CASE NO. 10-22862-CIV-KING/BANDSTRA
CASE NO. 10-22854-CIV-KING/BANDSTRA

contrast to *Ledford*, it is undisputed here that DMA did not waive timely exercise of the extension option and has not accepted rent after lease expiration (which has not yet occurred). As held in *Ledford*, Group USA's "mere expression … of an intention to have timely exercised" (GUSA Stmt. ¶ 30) is not sufficient to obtain equitable relief.

Notably absent from Group USA's motion is any reference to *Douglass v. Jones*, 422 So. 2d 352 (Fla. 5th DCA 1982). In *Douglass*, the District Court of Appeal reversed an order granting specific performance of a tenant's renewal option, which was exercised five days late. The appellate court held the attempted renewal "untimely and ineffective." *Id.* at 354. Not only was Group USA's attempted exercise of its extension option dramatically more untimely than that deemed ineffective in *Douglass*, but the lease between the parties here includes the express provision that failure to exercise the extension option timely renders it "null and void and of no further force or effect" (GUSA Stmt. ¶ 15). This provision nullifying the option if not exercised timely is a unique term negotiated by the parties that does not appear to be present in any of the cases cited by Group USA, and it is further support for the conclusion that there is no basis to rewrite the lease in a manner that favors Group USA and excuses its failure to comply.

Another decision surprisingly absent from Group USA's motion is *Friendship Park Property Corp. v. Shaw*, 505 So. 2d 456 (Fla. 1st DCA), *review denied*, 515 So. 2d 229 (Fla. 1987), one of the most thorough analyses of this subject by a Florida court. In *Friendship Park*, the District Court of Appeal affirmed the denial of equitable relief sought by a tenant. *Dugan* was recognized as controlling, but *Friendship Park* announced "a general rule that equity will intervene only if (1) the tenants [sic] delay in giving notice of renewal was slight, (2) the delay did not prejudice the landlord, and (3) failure to grant relief would cause the tenant unconscionable hardship." *Id.* at 458. There was no abuse of discretion in the trial court finding

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

that the delay in giving notice of renewal was a result of negligence[2] on the part of the tenant, the six-month delay was more than slight, and that the failure to grant relief would not cause unconscionable hardship (there was no prejudice to the landlord).   Any cited hardship or prejudice is not identified in the decision.  *Id.*

Three important principles can be gleaned from *Friendship Park*.  First, "delay alone can be sufficient to deny equitable relief", *id.*, citing *Douglass*.  Group USA's 129-day delay (DMP Stmt. ¶ 60) should be recognized as not slight and thus sufficient alone to preclude the use of equity.   Second and concomitantly, prejudice to the landlord (which has been and will be suffered by DMA, as is discussed in § III(C) below, if the Court rewrites the lease in the manner sought by GUSA) is not required to reject equitable relief, nor is unconscionable hardship to the tenant (also discussed below in § III(D)).  Third, negligence on the part of the tenant in failing to exercise the option in a timely fashion is a pertinent factor in determining whether its "mistake" is one that can conceivably be excused by equity.   Group USA's "mistake" was committed without due care, unilaterally, and without contribution by the Dolphin Mall Parties (*id.* ¶ 62).

Yet another noteworthy decision ignored by Group USA is *Thrifty Dutchman, Inc. v. Florida Supermarkets, Inc.*, 541 So. 2d 634 (Fla. 3d DCA), *review denied*, 551 So. 2d 461 (Fla. 1989), in which the Third District Court of Appeal reversed as an abuse of discretion the use of equity to renew a lease.  The trial court found that timely renewal notice was not provided, but it still permitted the option to be exercised.   In reversing, the Third District noted that "[t]he general rule governing notice of lease renewal is that the giving of timely notice, in accordance with the provisions of the lease, is a condition precedent to the lessee's right to renew.  The rule

---

[2] Under Florida law, negligence "may be defined as the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances", 38 FLA. JUR. 2D Negligence § 1(2005), citing, *inter alia*, *De Wald v. Quarnstrom*, 60 So. 2d 919 (Fla. 1952).

7

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

is grounded on the principle that time is of the essence in an option contract and that a notice requirement is strictly construed." *Id.* at 636.[3]  *Dugan*'s exceptions were inapplicable because there was no claim of accident, fraud, surprise or mistake to excuse the lack of timely notice.  As held in *Thrifty Dutchman*, "because failure to give notice was due to the negligence of the lessee, unaccompanied by fraud, accident, surprise or mistake, equity could not intervene to relieve the lessee from the consequences of its actions."  *Id.*

 *Thrifty Dutchman* thus teaches the important and applicable lesson that there is a distinction between a mistake and negligence, and where negligence was the cause of the failure to exercise the option, "equity could not intervene to relieve the lessee from the consequences." *Id.*  Other Florida decisions, outside the context of lease option extensions, emphasize and explain the basis for the distinction recognized in *Thrifty Dutchman*.  In *Graham v. Clyde*, 61 So. 2d 656 (Fla. 1952), the Florida Supreme Court reversed the use of equity to relieve a contract bidder from a bid that was too low because of an arithmetic error, holding that "[e]quity will not relieve against the mistake of one guilty of culpable negligence, neither will it relieve against a mistake that could have been avoided by caution.  If the one seeking relief could have avoided his mistake by reasonable care or diligence, a court of equity will not relieve him.  In other words if one's mistake is due to his own negligence and lack of foresight and there is an absence of fraud or imposition, equity will not relieve him."  *Id.* at 657.  The bidder sought relief from a clerical error that was its responsibility.  The court reasoned that if relief "is granted then any clerical error or error in calculation can be relieved against.  We do not think this is the law. Unilateral errors are not generally relieved against."  *Id.* at 658.

---

[3]  *See also Steinberg v. Sachs*, 837 So. 2d 503, 505 (Fla. 3d DCA 2003) (an option contract "compels performance within the time limit specified") (citation omitted).

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

The reasoning in *Graham* wholly applies to this situation.  Group USA's "mistake" was a unilateral error that could have been avoided by reasonable care (DMP Stmt. ¶ 62).  Equitable relief is therefore unavailable.  *See also Johnson v. Green*, 54 So. 2d 44, 46 (Fla. 1951) ("equity will not grant relief where the mistake complained of resulted from the want of care or that degree of care and diligence which could be exercised by persons of reasonable prudence under the same circumstances"); *Hill v. Lummus*, 123 So. 2d 365, 366 (Fla. 3d DCA 1960) ("it is settled law in this state that a court of equity will not assist one in extricating himself from circumstances which he has created"); *Friedland v. City of Hollywood*, 130 So. 2d 306, 308 (Fla. 2d DCA 1961) ("[e]quity will not grant relief from a 'self-created' hardship").

While Group USA does discuss two other Florida decisions – *Holmes Regional Enters., Inc. v. Advanced Medical Diagnostics Corp.*, 582 So. 2d 822 (Fla. 5th DCA 1991), and *Investment Builders of Fla., Inc. v. S.U.S. Food Market Invs., Inc.*, 753 So. 2d 759 (Fla. 4th DCA 2000) – where the use of equity to excuse an untimely lease extension was affirmed on appeal, neither decision is helpful to its position.  The scanty *Holmes* decision provides no factual recitation or basis for the exercise of equity, other than noting that the option was exercised about five weeks late, 582 So. 2d at 822, far from the 129 day late exercise by Group USA.  *Investment Builders* likewise does not include a factual recitation or basis for the exercise of equity, but it does emphasize that the option was exercised a mere eight days late because of the tenant's president being ill, 753 So. 2d at 759, which is nothing akin to the self-created negligence that caused Group USA to miss its deadline.[4]

---

[4] In a footnote, Group USA also cites *Roschman Partners v. S.K. Partners, Ltd.*, 627 So. 2d 2 (Fla. 4th DCA 1993), *review denied*, 639 So. 2d 980 (Fla. 1994), for the proposition that equity will compel performance of an option "where the optionee stands to lose a great deal." *See* Motion at 3, n. 4.  Actually, the use of equity to excuse a non-material breach of a contractual

In summary, a review of the pertinent Florida authorities makes it plain that the situations where equity can be applied to relieve the failure to exercise a lease extension option in a timely manner are narrow and exacting.  The facts here, in which it is undisputed that the Dolphin Mall Parties had no prior knowledge that Group USA intended to exercise the option (DMP Stmt. ¶ 58), the terms of the lease provide that failure to exercise timely renders the option "null and void and of no further force or effect" (GUSA Stmt. ¶ 15), the first purported exercise of the option was 129 days late (DMP Stmt. ¶ 60), and Group USA's failure to exercise the option in a timely manner was a unilateral error resulting from its own negligence (*id.* ¶ 62), all compel the result that summary judgment must be entered in favor of the Dolphin Mall Parties, with a declaration that the lease expires February 28, 2011 and cannot be extended.

### III.   Application of the Potentially Pertinent Factors Establishes that Group USA Is Not Entitled to Have the Lease Rewritten and its Untimely Exercised Option Extended

The case law surveyed above reflects several factors that the Court may look to in determining the availability of equity to excuse Group USA's failure to comply with the lease's extension option provision.  Each of those factors is discussed separately below.

#### A.   There was undue delay in giving notice of the extension

Under Florida law, "delay alone can be sufficient to deny equitable relief."  *Friendship Park*, 505 So. 2d at 458, citing *Douglass*, 422 So. 2d at 354 (five-day delay renders extension "untimely and ineffective").  Florida cases excusing the delayed exercise of a lease extension

---

non-recordation clause was affirmed in *Roschman* where the option holder had undertaken to re-zone the property and increase its value by $13 million, thus presenting a windfall to the property owner.  627 So. 2d at 4-5.  Here, Group USA raises no claim that it is entitled to equitable relief because of any leasehold improvements or expenditures that it has made (to the extent there were any such improvements, which pursuant to the terms of the lease, are the property of DMA at lease-end) (DMP Stmt. ¶ 67).  Group USA has also not brought value to Dolphin Mall, where it is the lowest performing anchor or major tenant (*id.* ¶ 65).  Therefore, the windfall concerns presented in *Roschman* are completely absent in this case.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

option for reasons other than waiver or misconduct by the landlord – neither of which is asserted here – involve delays of 18 days (*Dugan*), five weeks (*Holmes*), and eight days (*Investment Builders*).  Group USA's delay of 129 days (DMP Stmt. ¶ 60) – well more than four months – dwarfs that of the tenants that have successfully invoked equity.  The failure of Group USA to establish that its delay was slight is therefore fatal to its attempt to have this Court utilize equitable principals to rewrite the lease.

In an effort to distract attention from its lengthy and disqualifying delay, Group USA disregards Florida law and looks instead to a decision from Hawaii, *Aickin v. Ocean View Invs. Co., Inc.*, 935 P.2d 992 (Haw. 1997).  *See* Motion at 13.  In *Aickin*, the tenant exercised its extension option 126 days late, 935 P.2d at 995, it was stipulated that the failure to exercise timely was an oversight and not the product of negligence, *id.* at 1000, and the tenant made improvements of $142,038 to the premises.  *Id.* at 1001.  On those facts, it was held that Hawaii law would permit equity to excuse the untimely exercise, which the court characterized as not "unreasonably long" because it was "within the context of a ten-year lease of potentially fifty years' total duration."  *Id.* at 1000.

*Aickin* is distinguishable and applies principles that are rejected in Florida.  Group USA's lease has a potential duration of 30 years, not 50 years (GUSA Stmt. ¶¶ 14, 15).  Its failure to exercise timely was a unilateral error that was a product of its own negligence (DMP Stmt. ¶ 62).  It made no improvements to the premises that entitle it to equity (*id.* ¶ 67).  More fundamentally, no Florida court has looked to the "context" of the length of the delay in comparison to the potential length of the lease in deciding whether the delay is "unreasonably long."  Florida courts look to whether or not a delay was "slight".  *Friendship Park*, 505 So. 2d at 458.  In *Friendship Park*, the delay was over six months, but in the "context" of a lease with a potential duration of

99 years.  *Id.* at 457-58.  Paying no heed to the potential lease duration, the trial court rejected equitable relief and found "that the delay in giving the notice was **certainly** more than 'slight'", *id.* at 458 (emphasis added), with the appellate court affirming and holding that "[t]he finding that the delay was more than slight **can hardly be contested**."  *Id.* (emphasis added).  *See also Thrifty Dutchman*, 541 So. 2d at 635-36 (reversing use of equity to forgive an extension option exercised apparently less than four months late where the potential lease duration was 45 years).

In short, pursuant to governing principles of Florida law, it "can hardly be contested" that Group USA's 129-day delay was "certainly more than slight."  As a result, it fails a factor that, by itself, is sufficient for denial of equitable relief.  The length of Group USA's delay in seeking to extend the lease therefore warrants the entry of summary judgment in favor of the Dolphin Mall Parties and against Group USA.

**B.     Group USA's delay was the result of a negligent, unilateral error, not a "mistake" that equity can excuse**

For there to be any prospect for equitable relief, Florida law requires that the delay "results from accident, fraud, surprise, or mistake."  *Dugan*, 54 So. 2d at 202.  Group USA does not claim accident, fraud or surprise, but contends that the delay resulted from a mistake (GUSA Stmt. ¶ 26).  The mistake asserted by Group USA was a unilateral error that it committed through the negligent preparation of an internal document, and without contribution from the Dolphin Mall Parties (DMP Stmt. ¶ 62; GUSA Stmt. ¶ 26).  According to case law, the error committed by Group USA cannot and should not be excused by equity.

Under Florida law, equity cannot intervene to relieve a tenant from the consequences of its failure to exercise a lease extension option in a timely manner if the failure was due to the tenant's negligence.  *Thrifty Dutchman*, 541 So. 2d at 636.  "In other words if one's mistake is

due to his own negligence and lack of foresight and there is an absence of fraud or imposition, equity will not relieve him." *Graham*, 61 So. 2d at 657. That is what happened here. No matter how Group USA seeks to spin its "mistake", it was a product of negligence and want of care. Without reviewing the lease in its possession, Group USA, through its vice president, altered an internal document in August 2007 to insert an incorrect lease commencement date that was at variance with a tenant estoppel certificate that Group USA provided to the Dolphin Mall Parties in October 2007, **two months later**, reflecting the correct lease commencement date, lease expiration date and number of remaining options (DMP Stmt. ¶ 29).[5] Group USA's vice president thereafter relied on the erroneous document he created to assume that an option had already been exercised and was not subject to extension for several years, notwithstanding that the document did not reflect the exercise of an option (*id.*). All of these errors were committed unilaterally by Group USA with no contribution by the Dolphin Mall Parties, with whom Group USA never once communicated about any intention to extend (*id.* ¶¶ 58, 62).

Florida decisions like *Graham*, *Johnson*, *Hill* and *Friedland* (quoted at pages 8 and 9 above) establish the principal that a "self-created hardship" or a unilateral error resulting from negligence or want of care cannot be relieved by equity. That precise rule has been applied by other courts construing lease extensions. A particularly thorough analysis is found in *Utah Coal & Lumber Restaurant, Inc. v. Outdoor Endeavors Unlimited*, 40 P.3d 581 (Utah 2001). There, the landlord knew that the tenant intended to renew, but the tenant made a mistake because it was busy with other matters and failed to give written notice of lease renewal until 11 days after the

---

[5] Although Group USA claims that the October 2007 tenant estoppel certificate was never placed in its Dolphin Mall lease file, it produced from that same lease file another tenant estoppel certificate from July 2006 containing precisely the same information (DMP Stmt. ¶ 63), so obviously the correct information was available at all times, but just disregarded.

COFFEY BURLINGTON

deadline. *Id.* at 582. In reversing the use of equity to excuse the failure to timely exercise, the Utah Supreme Court observed that "equitable relief should not be used to 'assist one in extricating himself from circumstances which he has created'" and, "as a predicate to equitable relief, a party must exercise reasonable efforts to discharge his own obligations." *Id.* at 583 (quotations omitted). Thus, equity is limited "to cases of fraud, misrepresentation, duress, undue influence, mistake, and waiver." *Id.* Moreover, "equity should not be applied in situations where the lessee's negligence, inadvertence, or neglect caused the failure to exercise a lease renewal option. When a lessee is negligent in exercising an option it cannot be said that the lessee has exercised 'reasonable efforts to discharge his own obligations' because negligence indicates the absence of reasonable efforts…. Equitable relief should not be used to extricate the lessee from the consequences brought about by the lessee's own actions." *Id.* at 584. The court cited *Dugan* as having an equivalent rule. *Id.* The tenant's own negligence did not permit equity to excuse its failure. "[I]n equity a mistake cannot be based on a negligent action or omission." *Id.* at 585, citing 27A AM. JUR. 2d *Equity* § 7 (1996). While the court concluded that the tenant had not committed a mistake, even if the "untimely renewal was caused by a mistake, the mistake would have to be of a type for which equitable relief could be granted", which it was not. *Id.*

Not only is *Utah Coal* precisely on point and uses the same principles as are found in Florida law, but it has also been followed elsewhere. In *SDG Macerich Properties, L.P. v. Stanek Inc.*, 648 N.W.2d 581 (Iowa 2002), the Iowa Supreme Court reversed the use of equity to excuse the failure to timely renew a lease. The first sentence of the opinion is "Equity aids the vigilant, not those who forget to perform a legal duty." *Id.* at 583. The lease required notice of renewal 12 months before expiration, but the tenant gave notice 3½ months late. The late notice

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

was the result of forgetfulness or an oversight, which is not a mistake that can be relieved by equity.  *Id.* at 587.  In so holding, the court cited to *Utah Coal*.  *Id.*

In further rejecting the propriety of equity, the court noted that "the decision of which of two profit-seeking parties is more deserving to prevail is not within the province of the courts…. To hold otherwise would do nothing more than create instability in business transactions and disregard commercial realities."  *Id.* at 587-88.  As well, "all contracts would be called into question as meaningless and uncertain, depending upon the whims of a panacean court or a jury."  *Id.* at 588 (quotation omitted).  "The written words of the contract afford greater certainty of intention, and more accurate compliance with the performance of the terms of the contracts by the parties thereto than do the retrospective, impassive conclusions of a court of equity.  A court of equity should not be the first, but the last resort.  It is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and morality."  *Id.  Dugan* was cited as being an authority consistent with this approach.  *Id.* at 589.  The court concluded that "equitable relief is not available for a commercial party who, through its own carelessness, failed to timely exercise its option to renew a lease agreement.  We decline to jeopardize freedom of contract by stepping in and rewriting the parties' agreement to relieve the consequences of [the tenant's] mere forgetfulness."  *Id.*

Likewise, in *Western Sav. Fund Soc'y of Philadelphia v. Southeastern Pa. Transp. Auth.*, 427 A. 2d 175 (Pa. Super. Ct. 1981), the appellate court reversed the use of equity to excuse a renewal notice provided four days later than the lease deadline due to an administrative oversight resulting from a distracting corporate expansion program.  *Id.* at 177.  The appellate court found

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

that the oversight did not shift or lessen the tenant's responsibility for the error, which it deemed to be negligence that failed to "evidence either the degree of diligence or the unavoidable circumstances necessary to justify even equitable intervention." *Id.* at 180. This was so because "it is not unreasonable to expect the commercial tenant, as compared with his residential counterpart, to protect his business interests with meticulousness, a meticulousness to which he would hold his landlord." *Id.* (citation omitted). The landlord's rights are also entitled to consideration and "fairness militates against demanding more from the optionor than he lawfully agreed to give and instead obligates us to strictly enforce the agreement to ensure that neither party is prejudiced by a judicially authored revision of the agreement." *Id.* at 181.

In contrast, on the issue of whether its "mistake" was excusable, Group USA cites only to *Ward v. Washington Distribs., Inc.*, 425 N.E.2d 420 (Ohio Ct. App. 1980), a decision of an intermediate appellate court in Ohio that has been recognized recently as not even being good law in that state. *See Fifth Third Bank W. Ohio v. Carroll Building Co.*, 905 N.E.2d 1284, 1287 (Ohio Ct. App. 2009) (reversing trial court's reliance upon *Ward* in using equity to excuse failure to comply with lease's extension option provision because *Ward* cannot be reconciled "with the [Ohio] Supreme Court's holdings that unambiguous contractual language must be enforced as written, even when it will work a hardship on one party (or parties) and an advantage to another"). It is undisputed here that the extension option provisions are clear and unambiguous (DMP Stmt. ¶ 55).

The Court should therefore conclude that the "mistake" committed by Group USA is not subject to equitable relief. The entry of summary judgment in favor of the Dolphin Mall Parties is thus mandated.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

**C.**     <u>**DMA will be prejudiced by excusing Group USA's failure to comply**</u>

Prejudice to the landlord does not need to be present for the *Dugan* and *Friendship Park* analysis to result in the rejection of the tenant's request for equitable relief. *See Friendship Park*, 505 So. 2d at 458 (rejecting equitable relief even though there was no prejudice to the landlord). Indeed, here the length of the delay and the nature of the mistake both require denial of equitable relief. Nevertheless, there is abundant evidence of prejudice to DMA if the Court accepts Group USA's invitation to rewrite the lease so that the extension option provision is eliminated, but the below-market rental provisions are retained.[6]

Specifically, DMA is unable to enter into a lease with a new tenant for the space currently occupied by Group USA because its position that it is entitled to exercise the extension option notwithstanding its failure to comply with the extension option deadline makes it impossible for DMA to commit to a delivery date for a new tenant (DMP Stmt. ¶ 64). If a lease agreement with a new tenant cannot be struck because equitable relief is granted to Group USA, the cost to DMA will be in the tens of millions of dollars. Group USA only pays approximately $150,000 per year in rent (*id.* ¶ 66), although the market rate for the space is between $1,200,000 and $2,000,000 higher per year (GUSA Stmt. ¶ 36), and GUSA will have unjustly obtained a ten-year extension with an option for an additional extension at similar below-market rates.[7]

---

[6] In an Orwellian fashion, Group USA asserts that DMA's "only claimed prejudice is derived from having to live with the agreement that was struck in the Lease." Motion at 5. Of course, the agreement that was struck in the lease required the extension option to be exercised at least one year before term expiration lest it be rendered "null and void and of no further force or effect" (GUSA Stmt. ¶ 15), and it is Group USA that is asking the Court to relieve it from its failure "to live with the agreement that was struck." There is no argument by Group USA that DMA has refused to comply with the lease provisions that are not to its advantage.

[7] DMA's interrogatory answers also reflect that the "actions by Group USA have deprived DMA of the benefit of the bargain that was negotiated in establishing a renewal option with a one-year

17

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com      www.coffeyburlington.com

Where the use of equity to excuse an untimely exercise of a lease option extension will result in the landlord receiving below market rental payments, it has been held that the landlord has suffered prejudice that warrants denial of equitable relief.  *See Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 562 (N.D. 1981) (if equitable relief is granted to the tenant, the landlord "would be forced to accept inadequate rentals in comparison to what similar properties in the vicinity would command", and "inadequate rental payments … constitute sufficient prejudice to the [landlord] to justify the termination of the lease").  That is the case here, and DMA has presented more than sufficient evidence that it will suffer prejudice of tens of millions of dollars if Group USA is afforded the equitable relief it seeks.

### D.       Enforcing the lease will not place an unconscionable hardship on Group USA

As opposed to the evidence of prejudice to DMA presented above, the unconscionable hardship claimed by Group USA (which, if real, it will suffer at its own hands due to its own negligence) is entirely speculative and unworthy of credence.  Its professed concerns about lost goodwill, employees and customers and about future insolvency do not withstand scrutiny.

With regard to lost goodwill, employees and customers if its Dolphin Mall store closes, the evidence does not support such a claim.  First, Group USA has a profitable store nearby, at the Sawgrass Mills Mall in Sunrise (DMP Stmt. ¶ 49), where any such goodwill, employees and customers can be accommodated.  *See, e.g., Soho Dev. Corp. v. Dean & DeLuca Inc.*, 517 N.Y.S.2d 498, 500 (N.Y. App. Div. 1987) (reversing use of equity to permit exercise of lease renewal option after it expired, and noting that a prominent tenant "would have few problems, if

---

notice provision" (D.E. #35-37 at page 17).  In quoting DMA's interrogatory answer at page 14 of the summary judgment motion, Group USA utilized ellipses to delete the sentence quoted immediately above.  Ellipses, however, do not change the fact that DMA would be prejudiced by a result that rejects negotiated lease provisions that act to its benefit.

any at all, in re-establishing its customer goodwill and its position in the community, if a renegotiation of the lease were not possible"). Second, Group USA communicated with eight other malls in Miami-Dade and Broward Counties between March 2010 (immediately after the extension option deadline had passed unexercised by Group USA, but before Group USA was notified by the Dolphin Mall Parties of the expiration of the option) and August 2010 seeking space for another Group USA store. Accordingly, Group USA is more than capable of retaining the reputation, goodwill, customers and employees associated with its store at Dolphin Mall should it desire to do so (DMP Stmt. ¶ 49).[8]

As for possible future insolvency, Group USA's conclusions regarding potential future profits and losses are pure speculation and are not admissible evidence. Its faulty conclusions are also undercut by the failure to allocate corporate overhead among Group USA's approximately 25 stores in the profit and loss statement that it created for this lawsuit, thus creating a misleading statement of store-specific profitability (*id.* ¶¶ 50, 51). Additionally, after many years of consistent financial losses, Group USA had its first profitable fiscal year in recent times in the fiscal year ending January 2010 due to its decision to close some non-performing stores. If Group USA continues to close non-performing stores and open successful ones, it will be profitable. If not, it will continue to suffer the losses that it withstood during the prior eight years when it had a below-market lease at Dolphin Mall (*id.* ¶ 51). Regardless of its business decision, focusing on one store is narrow, short-sighted and irrelevant to a hardship finding.

Finally, Group USA argues at page 10 of its motion that it will suffer a forfeiture if the Court does not rewrite the lease and eliminate the extension option notice provision. That is

---

[8] Apparently, in an effort to point to "hardship" for litigation purposes, Group USA's efforts to locate another store in Miami-Dade County ceased in August 2010, the precise time when it filed the instant suit against the Dolphin Mall Parties.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

simply not the case.  DMA is not seeking early termination of the lease.  Group USA will receive its full lease term and will only lose an option that it failed to exercise and which was thus rendered "null and void and of no further force or effect."  *See Western Tire*, 307 N.W.2d at 562 ("refusal to give effect to a late attempt to accept the irrevocable offer created by the option results in no forfeiture because the option holder has received the full agreed equivalent of the price paid for the option"), citing 1A *Corbin on Contracts* § 273 (1963).  While Group USA's negligence may cause it some financial harm in losing an option to extend a below-market lease, that is doubtless the case with any tenant seeking equitable relief in similar circumstances.  There is nothing "unconscionable" about enforcing the terms of the lease.

## IV.   Conclusion

As demonstrated herein, it would be improper for the Court to eliminate the lease extension option notice provision that was negotiated, and utilize unfettered equity to confer a gift of millions of dollars upon Group USA, which money would be taken from the pocket of DMA.  That is not the role of courts in our society and Group USA's self-inflicted tale of woe does not change the fact that parties are bound by their agreements and unilateral errors resulting from one's own lack of care are not within the province of equity.  The 129-day delay in exercising the extension option cannot be excused.  Summary judgment should be entered in favor of the Dolphin Mall Parties, with a declaration that the lease expires February 28, 2011 and cannot be removed.  DMA also seeks the recovery of its attorney's fees and costs pursuant to Section 29 of the lease.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

Respectfully submitted,

Robert K. Burlington, Florida Bar No. 261882
rburlington@coffeyburlington.com
Daniel F. Blonsky, Florida Bar No. 972169
dblonsky@coffeyburlington.com
COFFEY BURLINGTON
Office in the Grove, Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
Tel:  305-858-2900
Fax:  305-858-5261
*Counsel for Dolphin Mall Parties*

By:  s/Daniel F. Blonsky

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 14, 2010 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Mailing Information for Case no.  10-22862-CIV-King/Bandstra  and  Case  no.  10-22854-CIV-King/Bandstra.    Counsel  of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF.  Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. Mail.

*s/* Daniel Blonsky

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com